# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

SANDBURG VILLAGE APARTMENTS    )
    )
    Plaintiff,         )
    )      Case No. 1:08-cv-03446
v.                         )      Honorable Ronald A. Guzman
    )
ILLINOIS HOUSING DEVELOPMENT    )
  AUTHORITY                )
    )
    Defendant.      )
    )

## ANSWER

Defendant Illinois Housing Development Authority ("IHDA") makes the following answer to the Complaint:

1.    Plaintiff is the owner of a multifamily rental housing project that is assisted under the U.S. Department of Housing and Urban Development ("HUD") project-based Section 8 Program. Under the project-based Section 8 Program, HUD makes rental assistance payments, called annual contributions, to a public housing agency ("PHA") such as the Defendant, Illinois Housing Development Authority ("IHDA"). These payments are made in accordance with an Annual Contributions Contract between HUD and the PHA. The PHA, in turn, remits a portion of the annual contributions it receives from HUD to the owner of a project, such as Plaintiff, in the form of housing assistance payments pursuant to a Housing Assistance Payments ("HAP") Contract between the PHA and the owner for the purpose of reducing the amount of rent paid by the tenants who live in the units covered by the HAP Contract.

**ANSWER:**    IHDA admits that Plaintiff is the owner of a multifamily rental housing project that is assisted under the project-based Section 8 program.  The remainder of Paragraph 1 contains legal conclusions to which no response is required, to the extent an answer is required, IHDA denies the remaining allegations of Paragraph 1.

2.    In accordance with the HAP Contract between Plaintiff and IHDA, Plaintiff is entitled to an annual increase in the rents and the housing assistance payments to which Plaintiff is entitled under the Contract.  Since 1994, IHDA has not, in accordance with the terms of the Contract, increased the rents or housing assistance payments payable under the HAP Contract between Plaintiff and IHDA.  The failure by

IHDA to increase the rents, and the housing assistance payments to which Plaintiff is entitled under the HAP Contract, constitutes a breach of the Contract between Plaintiff and IHDA.

**ANSWER:**    The HAP Contract between Plaintiff and IHDA speaks for itself regarding Plaintiff's entitlement to annual rent increases. IHDA avers that, as the Contract Administrator for Section 8 HAP Contracts, it is obliged to follow the requirements and directives of the U.S. Department of Housing and Urban Development ("HUD") with respect to making rent increases under those contracts. IHDA further avers that, since 1994, it has increased or not increased the rents payable under its HAP Contract with Plaintiff in accordance with HUD regulations and directives. The remainder of Paragraph 2 contains legal conclusions to which no response is required, to the extent an answer is required, IHDA denies the remaining allegations of Paragraph 2.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over this matter under 28 U.S.C. § 1331.

**ANSWER:**    Admitted.

4.    Venue in this Court is proper under 28 U.S.C. § 1391(b).

**ANSWER:**    Admitted.

## PARTIES

5.    Plaintiff is a limited partnership that was formed under the laws of Illinois. Plaintiff is the owner of Sandburg Village Apartments ("Sandburg"), a 128-unit multifamily rental housing project located in Galesburg, Illinois.

**ANSWER:**    IHDA admits that Sandburg Village Apartments is a 128-unit multifamily rental housing project located in Galesburg, Illinois. IHDA is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 5 and, therefore, denies same.

2

6.     The Defendant was created under the laws of Illinois. Defendant is a State Agency, as defined by 24 C.F. R. § 883.302 (2007), and a public housing agency, as defined by Section 3 of the United States Housing Act of 1937. 42 U.S.C. § 1437a.

**ANSWER:**     Admitted.

## FACTS

### The Section 8 Program

7.     This action arises under Section 8 of the United States Housing Act of 1937 Act, 42 U.S.C. § 1437f ("Section 8"). Section 8 was enacted in 1974 for the purpose of aiding low-income families in obtaining a decent place to live and promoting economically mixed housing.  Section 8 seeks to achieve these goals by providing rent subsidies on behalf of low-income families living in rental housing owned primarily by non-public persons and entities.

**ANSWER:**     Admitted.

8.     Section 8 authorizes HUD to enter into an Annual Contributions Contract ("ACC") with a PHA.   An ACC obligates HUD to provide funding to the PHA for the purpose of making monthly housing assistance payments to the owner of a multifamily rental housing project pursuant to a HAP Contract between the PHA and the owner.  The monthly housing assistance payments by the PHA to the owner benefit the low-income persons living in the units covered by the HAP Contract by reducing the amount of rent paid by those tenants.

**ANSWER:**     Admitted.

9.     HUD has implemented Section 8 through several distinct programs.     One such program is the Section 8 Program for State Housing Agencies. Sandburg was built, and is managed, under HUD's Section 8 Program for State Housing Agencies.

**ANSWER:**     Admitted.

10.    The policies and procedures applicable to a State Agency, as defined by HUD, and a project built under the Section 8 Program for State Housing Agencies are contained in 24 C.F.R. Part 883.

**ANSWER:**     Admitted.

11.    A HAP Contract is "The Contract entered into by the owner and the State Agency upon satisfactory completion of a new construction or substantial rehabilitation project which sets forth the rights and duties of the parties with respect to the project and the payments under the Contract." 24 C.F.R. § 883.302 (2007).

**ANSWER:**     Admitted.

12.    A Section 8 HAP Contract establishes a rent ("Contract Rent") for each unit covered by the HAP Contract. The monthly housing assistance payment for each unit is the difference between the Contract Rent and the amount the tenant is required by law to pay as rent.

**ANSWER:**    Admitted.

13.    Under HUD's Section 8 Programs, including the Program for State Housing Agencies, annual adjustment factors are used to calculate the annual increase in a Section 8 project's Contract Rents to which an owner is entitled under its HAP Contract. 24 C.F.R. § 888.201(2007). HUD is required to publish these adjustment factors by notice in the Federal Register at least annually. 24 C.F.R. § 888.202 (2007).

**ANSWER:**    IHDA denies the allegations of Paragraph 13, except admits that under certain of

HUD's Section 8 Programs, including the Program for State Housing Agencies, annual

adjustment factors are used to calculate the increase in a Section 8 project's Contract Rents, and

that HUD is required to publish these adjustment factors by notice in the Federal Register at least

annually.

14.    In HUD's Fiscal Year 1995 Appropriations Act, the "Departments of Veterans Affairs and Housing and Urban Development and Independent Agencies Appropriations Act, 1995", Congress revised Section 8 to limit the annual increase in the Contract Rents of a project assisted under Section 8, such as Sandburg, where the project's Contract Rents exceed the "fair market rental for an existing dwelling unit in the market area" except "to the extent that the owner demonstrates that the adjusted rent would not exceed the rent for an unassisted unit of similar quality, type, and age in the same market area." P.L. No. 103-327, 108 Stat. 2298, 2315(1994).

**ANSWER:**    Admitted.

15.    In that same Act, Congress further revised Section 8 by requiring that for the units in a Section 8 project that are occupied by the same family as the family that occupied the unit at the time of the previous annual rent increase, .01 be subtracted from the annual adjustment factor that would otherwise be used to increase a unit's Contract Rent, except that the factor may not be reduced to less than 1.0. P.L. No. 103-327, 108 Stat. 2298, 2315 (1994).

**ANSWER:**    Admitted.

16.    These two revisions to Section 8 (the "1994 Amendments") were originally effective for Fiscal Year 1995 only. Congress made the 1994 Amendments applicable to most of fiscal years 1996, 1997 and 1998. They were made permanent beginning with Fiscal Year 1999.

**ANSWER:**    Admitted.

17.    On March 7, 1995, HUD issued Notice H 95-12 ("Notice 95-12") for the purpose of implementing the 1994 Amendments.

**ANSWER:**    Admitted.

18.    In accordance with Notice 95-12, and subsequent Notices issued by HUD to further implement the 1994 Amendments, in order for the owner of a Section 8 project to receive the annual rent increase to which the owner would otherwise be entitled under its HAP Contract, the owner is required, when the Contract Rents exceed the applicable Fair Market Rents published by HUD, to submit an "Estimate of Market Rent by Comparison" on form HUD-92273 ("Form 92273") at least sixty days before the anniversary date of the owner's HAP Contract.

**ANSWER:**    Admitted.

19.    The purpose of Form 92273 is to calculate the estimated market rent for a project's units. If a project's Contract Rents, as adjusted by the applicable annual adjustment actor, are less than the rent calculated on Form 92273, an owner is entitled to the full increase.

**ANSWER:**    IHDA admits that the purpose of Form 92273 is to calculate the estimated market rent for a project's units. The remainder of Paragraph 19 contains legal conclusions to which no response is required, to the extent an answer is required, IHDA denies the remaining allegations of Paragraph 19.

20.    If a project's rents, as adjusted by the applicable annual adjustment factor, are greater than the estimated market rent calculated on Form 92273, then additional calculations are required to ensure that the difference between a project's initial Contract Rents and the rent for a comparable unassisted unit on the effective date of a project's HAP Contract is preserved.

**ANSWER:**    Paragraph 20 contains legal conclusions to which no response is required, to the extent an answer is required, IHDA denies the remaining allegations of Paragraph 20.

### Sandburg Village Apartments

21.    Sandburg was built under HUD's  Section 8 Program  for State Housing Agencies. The project consists of 44 one-bedroom units, 4 one-bedroom handicap units, 62 two-bedroom units, 2 two-bedroom handicap units and 16 three-bedroom units.

**ANSWER:**    Admitted.

22.    Plaintiff entered into a HAP Contract (the "Sandburg Village Contract") with IHDA effective October 1, 1980. A copy of the HAP Contract is attached as Exhibit 1. HUD signed and approved the HAP Contract between Plaintiff and IHDA.

**ANSWER:**    Admitted.

23.    There are six stages to the Sandburg Village Contract.

**ANSWER:**    Admitted.

24.    The effective date of Stage I of the Sandburg Village Contract was October 1, 1980. Stage I covers 12 two-bedroom and 12 three-bedroom units.

**ANSWER:**    Admitted.

25.    The effective date of Stage II and Stage III was November 1, 1980. Stage II covers 4 two-bedroom and 4 three-bedroom units. Stage III covers 12 one-bedroom and 12 two-bedroom units.

**ANSWER:**    Admitted.

26.    The effective dale of stage IV and Stage V was December 1, 1980. Stage IV covers 8 one-bedroom, 4 one-bedroom handicap, 10 two-bedroom and 2 two-bedroom handicap units.  Stage V covers 12 one-bedroom and 12 two-bedroom units.

**ANSWER:**    Admitted.

27.    The effective date of stage VI was March 1, 1981.    Stage VI covers 12 one-bedroom and 12 two-bedroom units

**ANSWER:**    Admitted.

28.    The initial term of the Sandburg Village Contract was five years. Ex. 1, §1 .lb. The Sandburg Village Contract is automatically renewable for seven additional five-year terms unless either party to the Contract notifies the other parry of its desire not to renew in writing at least sixty days prior to the expiration of the current term of the Contract, and the other party agrees in writing to the non-renewal. Ex. 1, §§ l.lc and 1.4a.

**ANSWER:**    The Sandburg Village Contract speaks for itself regarding its initial term and renewal provisions, to the extent an answer is required, IHDA denies the remaining allegations of Paragraph 28.

29.     The Sandburg Village Contract states, "On each anniversary date of the Contract,
        the Contract Rents shall be adjusted by applying the applicable Automatic Annual
        Adjustment Factor most recently published by the Government." Ex. 1, § 1.9b (2)
        (emphasis added).

**ANSWER:**    The Sandburg Village Contract speaks for itself regarding annual rent increases,

to the extent an answer is required, IHDA denies the remaining allegations of Paragraph 29.

30.     There are six anniversary dates of the Sandburg Village Contract, the effective
        date of each stage of the Contract.   IHDA is required by the Sandburg Village Contract
        to increase the Contracts Rents on the anniversary date for the units covered by each
        stage of the Contract.

**ANSWER:**    The Sandburg Village Contract speaks for itself regarding anniversary dates and

increases of the Contract Rents on the anniversary date(s), to the extent an answer is required,

IHDA denies the remaining allegations of Paragraph 30.

31.     The initial Contract Rents at Sandburg were: 1-bedroom-$318; 1-bedroom
        handicap-$335; 2-bedroom-$377; 2-bedroom handicap-$398; and 3-bedroom-$425.

**ANSWER:**    IHDA denies the allegations of Paragraph 31.

32.     Before Notice 95-12 was issued, the Contract Rent for each unit type at
        Sandburg was increased annually by IHDA, as required by Plaintiffs HAP Contract with
        IHDA.

**ANSWER:**    IHDA denies the allegations of Paragraph 32, except admits that, before Notice

95-12 was issued, the Contract Rent for each unit type at Sandburg Village Apartments was

increased annually.

33.     Although there have been increases in the Contract Rent for each unit type at
        Sandburg since Notice 95-12 was issued, the Contract Rents have not been increased
        annually as required by the Sandburg Village Contract.  In addition, the increases that
        have been made were less than the amount to which Plaintiff was entitled under the
        Sandburg Village Contract.

**ANSWER:**    IHDA denies the allegations of Paragraph 33, except admits that there have been

increases in the Contract Rent for each unit type at Sandburg Village since Notice 95-12 was

issued.   The remainder of Paragraph 33 contains legal conclusions to which no response is

required, to the extent an answer is required, IHDA denies the remaining allegations of Paragraph 33.

## COUNT I - BREACH OF CONTRACT

### (Failure to Increase Contract Rents)

34.    Plaintiff repeats and realleges paragraphs 1-33.

**ANSWER:**    IHDA repeats and realleges its answers to paragraphs 1-33.

35.    Under the HAP Contract between Plaintiff and IHDA, Plaintiff is entitled, on the anniversary date of each stage of the Contract, to an annual increase, based on the applicable annual adjustment factors published by HUD, in the Contract Rents at Sandburg.

**ANSWER:**    Paragraph 35 contains legal conclusions to which no response is required, to the extent an answer is required, IHDA denies the remaining allegations of Paragraph 35.

36.    Contrary to the terms of the HAP Contract between Plaintiff and IHDA, IHDA has not increased the Contract Rents at Sandburg annually, as required by the HAP Contract, since HUD issued Notice 95-12 on March 7, 1995. In addition, the increases to the Contract Rents at Sandburg made by IHDA since Notice 95-12 was issued were for an amount less than the amount to which Plaintiff was entitled under the HAP Contract.

**ANSWER:**    Paragraph 36 contains legal conclusions to which no response is required, to the extent an answer is required, IHDA denies the remaining allegations of Paragraph 36.

37.    IHDA's failure to increase the Contract Rents at Sandburg in accordance with the terms of the Sandburg Village Contract since HUD issued Notice 95-12 constitutes a breach of the HAP Contract between Plaintiff and IHDA.

**ANSWER:**    Paragraph 37 contains legal conclusions to which no response is required, to the extent an answer is required, IHDA denies the remaining allegations of Paragraph 37.

38.    This breach of the Sandburg Village Contract by IHDA has damaged Plaintiff by reducing the Contract Rents that are required by the Contract which, in turn, has reduced the housing assistance payments to which Plaintiff is entitled under the Sandburg Village Contract.

**ANSWER:**    Paragraph 38 contains legal conclusions to which no response is required, to the

extent an answer is required, IHDA denies the remaining allegations of Paragraph 38.

## COUNT II-BREACH OF CONTRACT

### (Reduction in Annual Adjustment Factors)

39.    Plaintiff repeats and realleges paragraphs 1-38.

**ANSWER:**    IHDA repeats and realleges its answers to paragraphs 1-38.

40.    Since Notice 95-12 was issued, HUD has published two tables of annual
adjustment factors when HUD published the factors in the Federal Register. Table I has
been applicable to turnover units, i.e. units that were occupied by a family different
from the family that occupied the unit at the time of a project's previous annual rent
increase.   For non-turnover units, i.e. units that were occupied by the same family
as the family that occupied the unit at a project's previous annual rent increase,
Table 2 has reduced the adjustment factors in Table 1 by .01, except no factor was
reduced below 1.0.

**ANSWER:**    Admitted.

41.    Since Notice 95-12 was issued, IHDA has reduced the annual adjustment
factors otherwise applicable to Section 8 projects, including the adjustment factors
applicable to Sandburg, by .01 for non-turnover units.

**ANSWER:**    IHDA denies the allegations in Paragraph 41, except admits that, since Notice 95-

12 was issued, the annual adjustment factor it has applied to Section 8 projects, including

Sandburg Village Apartments, for non-turnover units has been .01 lower than the adjustment

factor for comparable turnover units.

42.    Any reduction by IHDA of the annual adjustment factor for non-turnover units at
Sandburg results in Contract Rents that are lower than the Contract Rents to which
Plaintiff is entitled under the HAP Contract between Plaintiff and IHDA.    This
constitutes a breach of the HAP Contract between Plaintiff and IHDA and damages
Plaintiff by reducing the Contract Rents, and the housing assistance payments, to which
Plaintiff is entitled under its HAP Contract with IHDA.

**ANSWER:**    Paragraph 42 contains legal conclusions to which no response is required, to the

extent an answer is required, IHDA denies the remaining allegations of Paragraph 42.

9

## COUNT III-BREACH OF CONTRACT

### (Rent Comparability Study)

43.    Plaintiff repeats and realleges paragraphs 1-42.

**ANSWER:**    IHDA repeats and realleges its answers to paragraphs 1-42.

44.    IHDA requires Plaintiff, and owners of other Section 8 projects, to submit a Rent
Comparability Study, prepared at Plaintiffs expense, before deciding whether to increase
the Contract Rents at Sandburg Village Apartments.

**ANSWER:**    IHDA denies the allegations in Paragraph 44, except admits that, pursuant to the

procedures set forth in Notice 95-12, it requires Plaintiff to submit a Rent Comparability Study,

prepared at Plaintiff's expense, before deciding whether to increase the Contract Rents at

Sandburg Village Apartments.

45.    In 2000 Plaintiff submitted a Rent Comparability Study in connection with a rent
increase request submitted by Plaintiff to IHDA.

**ANSWER:**    Admitted.

46.    No provision of Plaintiffs HAP Contract with IHDA requires Plaintiff to submit a
Rent Comparability Study before receiving the annual rent increase to which Plaintiff is
entitled under the Sandburg Village Contract.

**ANSWER:**    The provisions of Plaintiff's HAP Contract speak for themselves regarding

whether they require a Rent Comparability study as a condition for an annual rent increase, to the

extent an answer is required, IHDA denies the remaining allegations of Paragraph 46.

47.    The requirement to submit a Rent Comparability Study imposed by IHDA on
Plaintiff constitutes a breach of the HAP Contract between Plaintiff and IHDA.

**ANSWER:**    IHDA denies the allegations of Paragraph 47.

48.    Plaintiff has been damaged by this breach of the Sandburg Village Contract by
IHDA through the cost incurred by Plaintiff in obtaining the Rent Comparability Study
submitted by Plaintiff to IHDA.

**ANSWER:**    Paragraph 48 contains legal conclusions to which no response is required, to the extent an answer is required, IHDA denies the remaining allegations of Paragraph 48.

**DEFENSES**

1.    The Complaint fails to state a claim upon which relief may be granted.

2.    The Complaint is barred by the applicable statutes of limitations, as well as the doctrine of laches.

Respectfully submitted.

/s/ Martin G. Durkin
Martin G. Durkin, Esq., ARDC # 6199640
martin.durkin@hklaw.com
Christopher J. Murdoch, ARDC # 6196537
chris.murdoch@hklaw.com
HOLLAND & KNIGHT LLP
131 South Dearborn Street
Chicago, IL  60603
312-578-6574
312-857-6666(fax)

Attorneys for Defendant and Third-Party Plaintiff
*Illinois Housing Development Authority*

Of Counsel

Steven D. Gordon
HOLLAND & KNIGHT LLP
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, D.C. 20006
Telephone:  (202) 955-3000
Fax:  (202) 955-5564
Email:  sgordon@hklaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on, July 28, 2008, I electronically transmitted the foregoing **Answer** to the Clerk of the Court, using the ECF systems for filing, and caused the ECF system to transmit a Notice of Electronic Filing to the counsel of record listed on the ECF system for this case.

/s/ Martin Durkin
Martin Durkin

**CERTIFICATE OF SERVICE**

I hereby certify that on, July 29, 2008, I forwarded a copy of the foregoing **Answer** via

U.S. first class mail to the following:

> Richard A. Wolfe
> Wolfe & Polvin
> 180 N. LaSalle Street
> Suite 2420
> Chicago, IL  60601
>
> Carl A.S. Coan, Jr.
> Coan & Lyons
> 1100 Connecticut Avenue, N.W.
> Suite 1000
> Washington, DC  20036
> (202) 728-1070
> (202) 293-2448

/s/ Martin Durkin
Martin Durkin